Our next case for argument today, I believe both counsel are appearing remotely, is Swain v. Wormuth, Appeal No. 21-2938, and we'll hear first from counsel for Mr. Swain.  Judge, may it please the court and counsel, I'm Steve Fehwiger, and I represent Gary Swain, a disabled federal employee who works at the Rock Island Arsenal. Mr. Swain had a series of injuries to his arms and shoulder that left him disabled. He previously was a wage grade 10 machinist, but because of the nature of his injuries, he ended up taking on September 24, 9, 2014, a permanent reassignment to a lower grade with pay retention. We are here on appeal of a summary judgment order entered by Judge Darrow on September 30, 2021, in which the court found that the army did not discriminate against him on the basis of his disability when it refused to install door and also in denying him the right to work overtime from January 24, 2017 onward, despite the fact that two non-disabled workers who had a 15 pound and five pound weight restriction were allowed to work overtime by the same supervisor. Mr. Fehwiger, I'd like to pose a question concerning the doors because there are some lack of clarity as to which sets of doors we're talking about. Mr. Swain originally requested openers on two sets, first the tool setting door and then the double hallway door. The supervisor approved the request for the first, but declined on the second, but did approve a replacement for a different set of doors that led to a men's restroom. That's the third set. Is that correct? That's correct, your honor. And then with regard to that requested accommodation, looks like about a year and 10 month delay. Is that associated with the replacement doors that went to the men's restroom or the tool setting door? The tool setting doors that led to the union office. Mr. Swain had requested that in a meeting on November 14, 2014. And he believed that he had reached an agreement with his then supervisor, Pam Kellams and Janet Coupe. And Ms. Coupe was the Army's workers' compensation representative who worked with Mr. Swain with respect to accommodations and also worked with him with respect to the reduction in his job from a wage grade 10 down to a wage grade six level. So the request for that accommodation was in November of 14. The person responsible for arranging it approves it in October of 15. And by August of 16, the openers were installed about 22 months. And again, this is with regard to the doors for the tool setting room. Correct. Thank you. You may continue. During all that time, Mr. Swain was able to continue working? Yes, he did. So why? And he's continued to work throughout, right? That's correct. At the risk of asking an elementary question, if he's been able to continue doing the job, why are the accommodations that were provided inadequate? Because the doorway that he asked for the accommodation to building 210 had a, to open the door at a 13 pound pressure to open it. As the testing showed, Mr. Swain had a 10 pound weight restriction permanently with respect to his left arm. Therefore, we're saying that he had asked for and requested a reasonable accommodation to have door openers on those two doors that he routinely used. I understand that he wanted that. But if he was able to do the job, I understand the relevant statutes, both the ADA and the Rehabilitation Act to say, in essence, the idea is to make sure that accommodations are provided that allow the person to do the work. And he was able to do the work. Well, that's like saying, Judge, um, you have a person who is blind, who continues to work, but asked for a reasonable accommodation and was denied by the employer that reasonable accommodation of say, uh, an enhanced, uh, um, um, reader, um, machine. The ADA and Rehabilitation Act don't tell the employee that you just have to muddle along. They can, they tell the employer, you have to provide reasonable accommodations that will allow the person to do the essential functions of the job, right? Correct. Was he unable to do the essential functions of the job? No, he was doing the essential functions of the job. Okay. Could I ask you one question about the overtime claim, uh, Mr. Feweger, and that is, um, at page 12 of your brief, I think there may have been some garbled language, but you say that Mr. Swain was later allowed to work overtime hours in the fall of 2018. And you ask rhetorically, if his weight restriction was his disqualifying factor, then why was he subsequently allowed to work overtime in the fall of 2018, the weight restriction still existed? Correct. The government has responded in its brief by saying, no, actually, uh, the doctor changed his, removed that weight restriction, um, in 2018, and, uh, that's why he was able to do, start doing overtime work. Do you have a response to that? I, I don't believe that that was correct. That the, that the, um, doctor removed the 10 pound weight restriction. I think that was a permanent weight restriction with respect to his left arm. And. We'll ask Ms. Fruman about that. Okay. But I have to say, if that were the case, that's something I would have expected your brief to tell me about. Um, let's see. Did you also want to, I mean, we don't have a reply brief from you in this case. The government tells us that Mr. Edwards and Mr. Ziegler are not appropriate comparators, um, for the overtime issue. Do you want to address that? Well, they were both supervised by the same person, Ron Strobane. Um, Mr. Edwards at that time had a 15 pound weight restriction. Nick Ziegler had a five pound weight restriction. Is there any evidence that the supervisor was aware of those restrictions? I believe, uh, with respect to Mr. Ziegler, he did. I'm not sure in the record that, uh, Mr. Edwards, um, was aware or that he was aware of Mr. Edwards' restriction. I've used up my time that I've reserved for rebuttal, so. All right. Thank you very much, Mr. Friweger. Ms. Fruman. Thank you, Your Honor. May it please the court. My name is Hillary Fruman. I represent the United States. I would like to, uh, go directly to the court's, uh, most recent questions with respect to the comparators, if I might. And specifically, there is no firm evidence in the record of any weight restrictions as to either one of those individuals, Mr. Edwards or Mr. Ziegler. But Mr. Strobane, the supervisor, stated specifically that he was not aware that Edwards had any weight restrictions and, uh, that, or any weight restrictions that dealt with, uh, his inability, uh, to lift. And if there was the weight, the specific restriction was to, as a specific type of machinery, so it wasn't as to lifting. And, uh, Mr. Strobane specifically stated that, um, Mr. Ziegler, uh, was a person for whom he was not aware of a restriction. And in any case, Mr. Ziegler was a contract employee and therefore was not under the same rules that, uh, plaintiff, uh, operated under. Mr., uh, and true, Mr. Strobane did supervise all three individuals, so certainly his statement should be taken, uh, as the most important and relevant for the record. Um, Mr., our plaintiff, uh, may have been under the same weight restrictions, but what happened in 2018 was that he brought in a specific statement from his physician that said he was allowed to work overtime. And if one has to look at it from the employer's point of view, you have supervisors now holding in his hands a statement from a physician that says this employee is allowed to work overtime. Obviously, the employer is going to take that as the rule and therefore he assigns him to overtime. Um, a bit odd that this plaintiff who was so very, um, careful to protect his various restrictions prior to that comes in with this statement, but so he did and the employer took it as the rule. It's a statement from a physician. It is also, we have a plaintiff who makes very confused statements as to when he was allowed to work overtime or when overtime was available. He admits specifically that in March of 2017, he had a five pound weight limit from waist to head. And then he also states there was no overtime available until January of 2017. And then we have a supervisor who very strongly states in the record that there was only one employee who could work overtime at a time. They did not employ two people to work overtime, so you would have had an employee who was responsible for whatever work was required in the overtime. And of course, he has a very specific weight restriction, so he wasn't assigned overtime. And that was as per union contract. We have a employer, the JMTC, the Joint Manufacturing Technology Center, that provided every accommodation that it possibly could for this employee over a fairly lengthy period of time. The agency, both before and after this employee had filed EEO complaints, provided accommodation. They set up a special category for his employment that limited what his requirements would be. It's a lightweight category. Then they provided him a special scale that he requested. They provided him the accommodation he requested when he wanted an automatic cart transportation. And his supervisor even changed that request. It originally was just for an automatic cart, but then the physician stated, no, it can't be just automatic, it has to have automatic steering. And so that change was made. So we have an employer who's made every accommodation that the employer possibly could, including, ultimately, we do get the special door opener. Not on the door the plaintiff requested, on a different door, but it simply allows him easy access to the men's room. There's nothing that ever prevented this employee from performing the requirements of his job. So therefore, the defendants here simply see no basis for the plaintiff's claim that he was discriminated against. I don't wish to take the court's time unnecessarily. If the court has no further questions, the defendant would simply urge that the decision of the district court be affirmed. Thank you, counsel. Mr. Feweger, you have some time for rebuttal if you would like. OK, thank you. Ms. Fruman pointed out that the doctor's restriction brought in said that he could work overtime. It did not say that the weight restriction was lifted. The Army has maintained that he could not work overtime because there was a 10-pound weight restriction. Well, if he could work overtime when he brought in a doctor's excuse saying he was released to work overtime as of 2018, why couldn't he have worked overtime from January 24th, 2017 onward? You seem to be taking the position that the employer should have disregarded his doctor's restrictions and lifting of restrictions. No, I'm not, because the restriction wasn't taken off in 2018. So they should not have allowed him to work overtime despite one surgeon saying he could? No, the surgeon is saying he is eligible for overtime, but he didn't say that I lifted the weight restriction. This sounds like you're playing games with the employer and putting it in an impossible position, frankly, to me. If you're... maybe I'm misunderstanding this. I don't have any further response to that, Your Honor. All right. Our thanks to both counsel, and the case will be taken under advisement.